BURLINGTON POLICE DEPARTMENT vs. HAGOPIAN, 100 Mass. App. Ct. 720

 
 BURLINGTON POLICE DEPARTMENT vs. ROBERT M. HAGOPIAN.

100 Mass. App. Ct. 720
 October 12, 2021 - February 22, 2022

Court Below: District Court, Woburn Division
Present: Meade, Desmond, & Ditkoff, JJ.

 

Corrected January 30, 2023.

Motor Vehicle, Citation for violation of motor vehicle law. District Court, Appellate Division. Police Officer. Unauthorized Practice of Law. Registrar of Motor Vehicles. Uniform Rules on Civil Motor Vehicle Infractions. Jurisdiction, Civil motor vehicle infraction. Constitutional Law, Freedom of speech and press, Vagueness of statute.

No statute, rule, or legal principle prohibits a police prosecutor from prosecuting a civil motor vehicle infraction in the Appellate Division of the District Court; accordingly, the Appellate Division properly denied a violator's motion to strike a brief filed by a police officer in the violator's appeal from a de novo hearing before a judge. [722-725]

The prohibition on operators of motor vehicles from sounding, among other things, a horn so as to make a harsh, objectionable, or unreasonable noise, under G. L. c. 90, § 16, is not unconstitutionally vague, where the Massachusetts Driver's Manual made available by the registry of motor vehicles, as an authoritative source of information, comports with the common understanding of what uses of motor vehicle horns are objectionable. [725-726]

At a de novo hearing before a District Court judge on a civil motor vehicle infraction citing the violator with unreasonable honking of his vehicle's horn under G. L. c. 90, § 16, even assuming without deciding that the question whether there was adequate evidence for a reasonable trier of fact to find that the violator committed the infraction was a question of law, the judge reasonably could have concluded from the evidence that the violator honked his vehicle's horn out of anger, to complain about a traffic jam, and to try to get traffic to move faster, all of which fell well within the mainstay of unreasonable, objectionable honking; accordingly, the evidence was adequate to support the finding of responsible. [726-727]

The prohibition on operators of motor vehicles from sounding, among other things, a horn so as to make a harsh, objectionable, or unreasonable noise, under G. L. c. 90, § 16, is not unconstitutionally overbroad, where, as narrowed by the Massachusetts Driver's Manual made available by the registry of motor vehicles, the prohibition on unreasonable or objectionable honking does not create a real and substantial deterrent on protected expression [727-728]; further, the prohibition was not overbroad as applied to a violator cited for a civil motor vehicle infraction under the statute, where those who witnessed the violator's excessive honking would not have seen it as expressing a particularized message, and where the violator's attempt on appeal to portray the honking as some sort of political protest of the town's 

 Page 721 

traffic management practices lacked merit [728-729].

There was no merit to the claim of a violator cited for a civil motor vehicle infraction for unreasonable honking of his vehicle's horn under G. L. c. 90, § 16, that he was deprived of due process by the discretion that the statute affords to a police officer observing a civil motor vehicle infraction to issue a citation or written warning. [729-730]

CIVIL ACTION commenced in the Woburn Division of the District Court Department on October 27, 2017.

 The case was heard by David E. Frank, J.

 Robert W. Hagopian for the defendant.

 Michael J. Kennefick for the plaintiff.

 DITKOFF, J. Robert M. Hagopian appeals from a decision and order of the Appellate Division of the District Court Department upholding a finding that he was responsible for the civil motor vehicle infraction of unreasonable honking, in violation of G. L. c. 90, § 16. We conclude that the Appellate Division properly allowed a police prosecutor, who was not an attorney, to file the prosecuting brief in the Appellate Division. We further conclude that the statute, as defined by common understanding and practice, is not unconstitutionally vague or violative of the First Amendment to the United States Constitution. Further concluding that there was adequate evidence to support a finding of responsible and that the fact that the police officer issuing the citation had the discretion to issue a written warning did not deprive Hagopian of due process, we affirm.

 1. Background. On October 16, 2017, police officers were working as part of a detail as a construction site was being set up at an intersection at the Middlesex Turnpike, "a busy public way in Burlington." This was "causing major traffic delays." Hagopian pulled into the intersection, "grew impatient," honked his vehicle's horn, and yelled at the officers. "This startled construction workers." Hagopian drove closer to one of the police officers, honked his vehicle's horn, and insulted the officer. The officer stopped Hagopian and issued him a citation for fifty-five dollars for unnecessarily honking his horn.

 Hagopian promptly requested a hearing before a District Court clerk-magistrate. On January 23, 2018, he appeared before a clerk-magistrate, represented by counsel, and the clerk-magistrate found Hagopian responsible. Hagopian then appealed to a District Court judge.

 On February 26, 2018, Hagopian, again represented by counsel, appeared before a judge for a de novo hearing. The citing 

 Page 722 

officer prosecuted the citation, testifying as set forth supra. Hagopian also testified at the hearing, and his testimony was not inconsistent with the officer's. He testified that he had to wait through two or three cycles of traffic lights, and he felt that the officer "did not appear to notice or care." He further testified that he honked the horn three times, the first two times to get the officer's attention. [Note 1] The third time, he "honked [his] horn at the officer and yelled at him to do something to manage the traffic."

 The judge found Hagopian responsible and assessed a fine of fifty-five dollars. Hagopian promptly appealed to the Appellate Division of the District Court. In the Appellate Division, the citation was again prosecuted by the citing officer, who filed a brief there. Hagopian filed a motion to strike the officer's brief and disqualify the officer from participating in the appeal, which the Appellate Division denied.

 In a decision and order dated March 3, 2020, the Appellate Division affirmed the judge's finding that Hagopian was responsible. Hagopian filed a timely notice of appeal pursuant to G. L. c. 90C, § 3 (A) (4), and G. L. c. 231, § 109, and this appeal followed. [Note 2] See Votta v. Police Dep't of Billerica, 444 Mass. 1001, 1001 (2005).

 2. Participation of the police prosecutor. "An individual who is issued a citation for a civil motor vehicle infraction (and not charged with a criminal violation arising from the same incident) must within twenty days either pay the scheduled assessment or contest responsibility for the infraction by requesting a noncriminal hearing before a clerk-magistrate of the District Court" (footnote omitted). Police Dep't of Salem v. Sullivan, 460 Mass. 637, 639 (2011), citing G. L. c. 90C, § 3 (A) (2). "Where an individual requests a hearing to contest responsibility for the infraction, the case proceeds before a clerk-magistrate, who shall enter a finding of 'responsible' only if it is proved by a preponderance of the credible evidence that the violator committed the infraction alleged." Police Dep't of Salem, supra, citing G. L. c. 90C, § 3 (A) (4). "The determination of the clerk-magistrate may be appealed to a judge of the District Court, who hears the case de novo." Police Dep't of Salem, supra, citing G. L. c. 90C, § 3 (A) (4). "The proceedings in such an appeal . . . begin with a clean slate."

 Page 723 

 Reading v. Murray, 405 Mass. 415, 418 (1989). [Note 3]

 For the vast majority of civil motor vehicle infractions, the case against the violator is presented before a clerk-magistrate or judge by a police officer, either the citing police officer or a police prosecutor using the citation, which is "prima facie evidence of the facts stated therein." G. L. c. 90C, § 3 (A) (4). "In the administration of the law concerning civil motor vehicle infractions, the police act as prosecutors as a practical matter in presenting such infractions to clerk-magistrates and to judges." Cambridge v. Phillips, 415 Mass. 126, 130 (1993). See also rule VII (c) (5) of the Trial Court Rules, the Uniform Rule on Civil Motor Vehicle Infractions (Uniform Rule on Civil Motor Vehicle Infractions) (police prosecutor may present case for civil contempt for failure to pay motor vehicle civil infraction fine). [Note 4]

 This procedure is consistent with the long-standing practice of allowing police prosecutors to prosecute nonjury criminal cases in District Court. See Burlington v. District Attorney for the N. Dist., 381 Mass. 717, 718 (1980). Accord G. L. c. 12, § 27 ("District attorneys within their respective districts shall appear for the commonwealth in the superior court in all cases, criminal or civil, in which the commonwealth is a party or interested"); G. L. c. 218, § 27A (g) ("The district attorney . . . shall appear for the commonwealth in the trial of all cases in which the right to jury trial has not been waived and may appear in any other case").

 It is true, as Hagopian argues, that "no individual may represent corporations or 'other parties in civil actions . . . without a license to practice law.'" Braxton v. Boston, 96 Mass. App. Ct. 714, 717 (2019), quoting Burnham v. Justices of the Superior Court, 439 Mass. 1018, 1018 (2003). Accordingly, a police officer without a law license cannot represent a municipality in a civil lawsuit. A civil motor vehicle infraction proceeding, however, is not a civil 

 Page 724 

lawsuit, nor is the municipality truly a party. Rather, "[d]etermining responsibility for a civil motor vehicle infraction involves a proceeding between the State and a motor vehicle operator." Commonwealth v. Mongardi, 26 Mass. App. Ct. 5, 8 (1988). "The procedure specified in [G. L.] c. 90C for the handling of civil motor vehicle infractions is essentially sui generis." Id. The police prosecutor represents not the municipality but the Commonwealth's interest in the enforcement of the applicable laws regarding its public ways. Accordingly, a police officer does not engage in the unauthorized practice of law by prosecuting a civil motor vehicle infraction.

 There is no other prohibition on a police officer's prosecuting a civil motor vehicle infraction in the Appellate Division. Rather, the Legislature has directed that "[s]uch appeals shall be governed by a simplified method of appeal established by rules promulgated by the chief justice of the district court department, subject to the approval of the supreme judicial court." G. L. c. 90C, § 3 (A) (5). That simplified method does not require that a transcript be ordered. See Uniform Rule on Civil Motor Vehicle Infractions (d) (3). [Note 5] Accord Ehsani v. Boston Police Dep't, 2001 Mass. App. Div. 182. As a result, there is a significant efficiency to having the officer who was present at the hearing submit the brief. Moreover, in a civil motor vehicle infraction appeal, the Appellate Division is far more likely to receive a brief from the prosecuting police officer than from an attorney. Municipalities are unlikely to incur the expense of hiring private counsel to prosecute a civil motor vehicle infraction, and those with law departments may be reluctant to divert the attention of staff attorneys away from the numerous duties of town counsel. [Note 6] Discouraging responsive briefing would not comport with creating

 Page 725 

 "a simplified method of appeal." G. L. c. 90C, § 3 (A) (5).

 It follows from this discussion that no statute, rule, or legal principle prohibits a police prosecutor from prosecuting a civil motor vehicle infraction in the Appellate Division of the District Court. Accordingly, the Appellate Division properly denied Hagopian's motion to strike the officer's brief.

 3. Vagueness. General Laws c. 90, § 16, states that "[n]o person operating a motor vehicle shall sound a bell, horn or other device, nor in any manner operate such motor vehicle so as to make a harsh, objectionable or unreasonable noise." "A law is unconstitutionally vague if it is not sufficiently explicit to give clear warning as to proscribed activities." Commonwealth v. Telcinord, 94 Mass. App. Ct. 232, 237 (2018), quoting Commonwealth v. Orlando, 371 Mass. 732, 734 (1977). "A statute will be deemed constitutional if it 'conveys [a] sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" Commonwealth v. St. Louis, 473 Mass. 350, 355-356 (2015), quoting Commonwealth v. Adams, 389 Mass. 265, 270 (1983).

 A "law is not vague if its meaning is ascertainable by reference to similar or related statutes, and 'even a vague statute may be made constitutionally definite by giving it a reasonable construction.'" Commonwealth v. Reyes, 464 Mass. 245, 249 (2013), quoting Commonwealth v. Kenney, 449 Mass. 840, 851 (2007). For vagueness purposes, references to regulations or even secondary sources may be "sufficient to establish a common understanding and practice" of a statutory prohibition. Reyes, supra at 254.

 Here, the relevant source of interpretation is the Massachusetts Driver's Manual (driver's manual), a document produced by the Registry of Motor Vehicles and available both online and in hard copy format. See Ortiz v. North Amherst Auto Rental, Inc., 64 Mass. App. Ct. 499, 500 (2005) (recognizing authority of driver's manual). Cf. Commonwealth v. Cano, 87 Mass. App. Ct. 238, 241-242 (2015) (defendant unable to obtain driver's license because "he was unable to read the driver's manual or take the written test"). The driver's manual instructs drivers of the following:

"Use your horn to:

 Page 726 

- Warn pedestrians or other drivers of possible trouble

- Avoid crashes

"Do not use your horn to:

- Show anger or complain about other drivers' mistakes

- Try to get a slower driver to move faster

- Try to get other vehicles moving in a traffic jam." [Note 7] 

Massachusetts Registry of Motor Vehicles, Driver's Manual, c. 3, at 72-73 (May, 2021), https://www.mass.gov/doc/drivers-manual/download [https://perma.cc/PZ5J-CDHN]. We cannot say that the actual practices of drivers on the roads in Massachusetts comport with this advice, although common practice seems to confirm that the recipients of honking consider such prohibited uses of horns to be objectionable. The driver's manual, as an authoritative source of information, however, comports with the common understanding of what uses of motor vehicle horns are objectionable. Accordingly, the prohibition on using a horn to make a harsh, objectionable, or unreasonable noise is not unconstitutionally vague. See Commonwealth v. Brown, 481 Mass. 77, 78 (2018).

 4. Adequacy of the evidence. A finding of responsible for a civil motor vehicle infraction shall be entered "if it was shown by a preponderance of the credible evidence that the violator committed the infraction alleged." G. L. c. 90C, § 3 (A) (4). Accord Police Dep't of Salem, 460 Mass. at 639. Although appellate review is limited to "[q]uestions of law," G. L. c. 90C, § 3 (A) (5), we assume without deciding that the question whether there was adequate evidence for a reasonable trier of fact to find that Hagopian committed the infraction is a question of law. Cf. Commonwealth v. Mazariego, 474 Mass. 42, 46 (2016) ("The decision to grant or deny a motion for a required finding [of not guilty] is a question of law"). To consider this as a question of law, we "must take the evidence in the light most favorable to the Commonwealth rather than weighing it independently." Commonwealth v. Hamilton, 83 Mass. App. Ct. 406, 410 (2013).

 Page 727 

 The citing officer testified that Hagopian was in a "major traffic delay[]," "grew impatient," honked his vehicle's horn, and yelled at and insulted the officers, "startl[ing] construction workers." Indeed, Hagopian's own testimony was that he felt the officers "did not appear to notice or care" about the inconvenience to him and that, at least the third time, he "honked [his] horn at the officer and yelled at him to do something to manage the traffic." The judge could reasonably conclude from this evidence that Hagopian honked his vehicle's horn out of anger, to complain about the traffic jam, and to try to get traffic to move faster. This falls well within the mainstay of unreasonable, objectionable honking. The evidence was adequate to support the finding of responsible.

 5. First Amendment. "The First Amendment doctrine of substantial overbreadth . . . is predicated on the danger that an overly broad statute, if left in place, may cause persons whose expression is constitutionally protected to refrain from exercising their rights for fear of criminal sanctions." Commonwealth v. Jones, 471 Mass. 138, 142 (2015), quoting Massachusetts v. Oakes, 491 U.S. 576, 581 (1989) (opinion of O'Connor, J.). "[A] statute is within constitutional limits, for purposes of challenges, such as here, to vagueness and overbreadth, so long as the statute is sufficiently explicit to give clear notice as to the proscribed conduct and does not prohibit a substantial amount of protected expression." Commonwealth v. Kenney, 449 Mass. 840, 858 (2007).

"If a statute's deterrent effect on protected expression is not 'both real and substantial' and if the statute is 'readily subject to a narrowing construction,' the doctrine of overbreadth may not be employed." Commonwealth v. Abramms, 66 Mass. App. Ct. 576, 580 (2006), quoting Young v. American Mini Theatres, Inc., 427 U.S. 50, 60 (1976).

 Here, as narrowed by the driver's manual, the prohibition on unreasonable or objectionable honking does not create a real and substantial deterrent on protected expression. The cases cited by Hagopian involve much broader prohibitions on honking. In State v. Immelt, 173 Wash. 2d 1, 5 (2011), the Washington Supreme Court struck down a county ordinance that prohibited any "sounding of vehicle horns for purposes other than public safety." That court concluded that there was no possible limiting construction of this ordinance based on the "sweep of this ordinance." Id. at 12. Similarly, in Eugene v. Powlowski, 116 Or.

 Page 728 

 App. 186, 190 (1992), the Oregon Court of Appeals struck down a municipal ordinance that "restrict[ed] all horn honking for any purpose at any time except as a warning." [Note 8] No limiting construction was possible as it was in fact used to prosecute motorists who were expressing support for protestors demonstrating against the Persian Gulf War. Id. at 188-189. Here, by contrast, G. L. c. 90, § 16, prohibits only harsh, objectionable, or unreasonable honking, construed to prohibit honking out of anger or to try to get other motorists to move. See Martinez v. Rio Rancho, 197 F. Supp. 3d 1294, 1300 (D.N.M. 2016) (city ordinance barring honking "in such manner as to distract other motorists on the public way or in such a manner as to disturb the peace" was constitutional).

 Hagopian fares no better in his as-applied challenge. "In evaluating whether allegedly expressive conduct brings the First Amendment into play, the Supreme Court has focused on the context in which the conduct took place, asking 'whether an intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who [perceived] it.'" Meaney v. Dever, 326 F.3d 283, 287 (1st Cir. 2003), quoting Texas v. Johnson, 491 U.S. 397, 404 (1989). Horn blowing "is not an expressive act a fortiori, and thus does not implicate the First Amendment unless context establishes it as such." Meaney, supra at 288.

 Horn honking may be expressive when used as a form of protected protest. See, e.g., Porter v. Gore, 354 F. Supp. 3d 1162, 1170 (S.D. Cal. 2018) (honking to "show[] support for the . . . protest" regarding member of Congress was expressive conduct). [Note 9] When "intended to embarrass, annoy or harass," however, honking is not constitutionally protected. State v. Compas, 1998 MT 140, at ¶ 25 (1998). Accordingly, honking to "disturb[] the[] peace" of recreational vehicle park residents is not constitutionally protected, even if the violator intended to express her disapproval of their presence. See id. at ¶ 26. Hagopian here honked his vehicle's horn out of impatience to show his anger at the 

 Page 729 

police officer for creating a traffic jam. Those who witnessed his excessive honking would not have seen it as expressing a particularized message, nor is his attempt now to portray it as some sort of political protest of the town of Burlington's traffic management practices persuasive. [Note 10] Accordingly, the First Amendment does not bar the citation here. See Weil v. McClough, 618 F. Supp. 1294, 1296 (S.D.N.Y. 1985) (claim of First Amendment protection predicated on theory that violator "was not simply expressing his frustration at being impeded by [a massive traffic jam]"). Contrast Goedert v. Ferndale, 596 F. Supp. 2d 1027, 1028 (E.D. Mich. 2008) (city ordinance unconstitutional as applied "to prohibit the display of signs asking motorists to 'honk' their horns to express their support for the demonstrators, and prohibiting motorists from honking their horns for that purpose").

 6. Discretion to issue warnings. A police officer observing a civil motor vehicle infraction has the discretion to issue either a citation or a written warning. See G. L. c. 90C, § 3 (A) (1). Hagopian argues that this discretion denies him due process. The Supreme Judicial Court has rejected this contention, concluding that, "in the absence of unfair discrimination or some other improper exercise of discretion, the judgment of the 'cop on the beat' is not subject to a valid constitutionally-based criticism where the range of clearly defined, available options is as narrow as it is in this case." Phillips, 415 Mass. at 130.

 Indeed, the law "was meant to confer independence on officers assigned to traffic enforcement duty." Newton Police Ass'n v. Police Chief of Newton, 63 Mass. App. Ct. 697, 699 (2005). The "no-fix" statute, G. L. c. 90C, § 2, was specifically intended to replace the old system, where the decision whether to issue a warning was made over a three-day period, because that created the "opportunity for subsequent maneuvering or pressure" in favor of the well-connected. Newton Police Ass'n, supra. Accord Commonwealth v. Ray, 95 Mass. App. Ct. 848, 852 (2019), quoting Commonwealth v. O'Leary, 480 Mass. 67, 71 (2018) (purpose of statute is "to prevent 'manipulation or misuse of the citation process'"). The citing officer's discretion did not deprive 

 Page 730 

Hagopian of due process.

Decision and order of Appellate Division affirmed. 

FOOTNOTES
[Note 1] He testified that the first honk was "lightly tooted," but the judge discredited this testimony. 

[Note 2] The town of Burlington obtained counsel to appear in this court. 

[Note 3] Accordingly, it is of no moment that we do not have any transcript of what transpired before the clerk-magistrate. 

[Note 4] Neither the district attorney nor the Attorney General sought to take over prosecution of this infraction, as is presumably their right. See Commonwealth v. Mongardi, 26 Mass. App. Ct. 5, 8 (1988) ("Determining responsibility for a civil motor vehicle infraction involves a proceeding between the State and a motor vehicle operator"); Uniform Rule on Civil Motor Vehicle Infractions (c) (5) (motor vehicle contempt action may be prosecuted by "District Attorney or police prosecutor"). See also Phillips, 415 Mass. at 126 (Attorney General assumed responsibility for prosecuting citation for illegal turn); Murray, 405 Mass. at 416 (Attorney General allowed to intervene after Appellate Division stage in civil motor vehicle infraction case). 

[Note 5] Instead, the Appellate Division will review the audio recording of the proceedings directly where necessary. See Uniform Rule on Civil Motor Vehicle Infractions (d) (3). Here, Hagopian prepared a transcript for the use of the Appellate Division, which was unnecessary for the Appellate Division's review, but was necessary for our review of the factual issues in the appeal. Nothing in our rules allows an appeal in the Appeals Court, even in a civil motor vehicle infraction case, to proceed without a transcript, unless transcription "is unnecessary to the adjudication of the appeal." Mass. R. A. P. 8 (b) (1) (B), as appearing in 481 Mass. 1611 (2019). 

[Note 6] The same reasoning does not apply to an appeal from a civil motor vehicle infraction to this court. Such appeals are exceedingly rare and thus impose little burden on municipalities. No statute requires a "simplified method of appeal" for civil motor vehicle infractions in this court, nor is there a tradition of police officers prosecuting minor criminal cases in this court. For the rare civil motor vehicle infraction that reaches the Appeals Court, an attorney must assume the prosecution. 

[Note 7] We reject Hagopian's suggestion at oral argument that perhaps the driver's manual did not exist in 2017. In fact, it did, and had the same instructions regarding honking that it has now. See Massachusetts Registry of Motor Vehicles, Driver's Manual, c. 3, at 72, https://web.archive.org/web/20171031035158/https://www.mass.gov/files/2017-06/Drivers_Manual.pdf [https://perma.cc/Q2YY-CSV4]. 

[Note 8] One court has upheld even such a restrictive ordinance, albeit in New York City, where the government need to restrict honking is unusually strong in light of the density of that city. See Weil v. McClough, 618 F. Supp. 1294, 1296-1297 (S.D.N.Y. 1985). 

[Note 9] Even so, the California statute was found to be an appropriate regulation as to the time, place, or manner of protected expression. See Porter v. Gore, 517 F. Supp. 3d 1109, 1132 (S.D. Cal. 2021). 

[Note 10] By contrast, where the context demonstrates that a person is conveying to others his views regarding police practices, even directing profanity and hostile gestures toward the police are protected by the First Amendment. See United States v. Poocha, 259 F.3d 1077, 1078-1079, 1082 (9th Cir. 2001), cited by O'Brien v. Borowski, 461 Mass. 415, 429 (2012). We have little doubt that this could include honking under appropriate circumstances. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.